BIDDLE, D. B. A. THE RECORD, *v.* VILLAGE OF HARRISON.

(No. A-257007—Decided June 19, 1973.)

Court of Common Pleas of Hamilton County.

*Ms. Sandra S. Beckwith,* for plaintiff.
*Mr. James S. Simmonds* and *Mr. John H. Engle,* for defendants.

BETTMAN, J. The issue submitted to the court is whether the village of Harrison is required by R. C. 731.21, to publish its ordinances, etc., in plaintiff's newspaper, The Record. Most of the essential facts are stipulated. In summary, they are that the village council of Harrison has been publishing its ordinances, etc., in The Harrison Press, which paper is an English language newspaper published and of general circulation in Harrison, and has refused to publish its ordinances, etc., in The Record, which is an English language newspaper published and of general circulation therein. This leaves for decision the factual issue whether these newspapers were "of opposite politics" and whether either was a "political newspaper."

The evidence was uncontradicted that The Harrison Press was an independent or non-political newspaper. The court is of the opinion that under the law and the evidence The Record is in fact also an independent or non-political newspaper.

There are cases, viz. State, ex rel. Wooster, v. Pethtel (1940), 33 Ohio Law Abs. 267 and Reefy v. Elyria (1913), 30 Ohio Cts. App. 273, 45 C. C. 387, which attempt to determine whether a paper is "political" by analyzing the owner's politics, the paper's editorials, preference in news items, support of candidates in the last preceding election, etc. In our judgment this procedure involves the courts in a sea of shifting facts and is not a correct interpretation of the legislative intent when it speaks of a "political newspaper" or "newspapers of opposite politics."

When these words were placed in the statute there were many newspapers throughout the state which held themselves out as "a Democratic newspaper" or "a Republican newspaper." This is what the Legislature had reference to when it used the words "political newspaper." The correct distinction is made by the Circuit Court of Franklin County in the Ohio State Journal Co. v. Brown (1900), 19 C. C. 325, 10 C. D. 470, in which the court states, at pages 326-327:

"A newspaper to be of a political party, within the

meaning of the statute, must profess to be so or be so known. It is not sufficient that it has, while professing to be an independent newspaper, supported a political party.

"A newspaper professing to be of a political party, or one so known, may be independent in the sense that it does not advocate all of the measures of its party, and yet be of the party, for its conduct may be owing to its judgment, or the want of it, and not to its want of faith; and an independent newspaper may advocate all of the measures of a party and support all of its candidates, and yet be not of the party, for its support of the party is to be attributed to its discretion, and not to its allegiance."

Although we recognize that the statute discussed in the *Ohio State Journal* case uses the words "of different political parties" the meaning and intent is the same as "of opposite politics" used in R. C. 731.21. *Columbus* v. *Barr* (1905), 6 C. C. (N. S.) 151, 27 C. C. 264.

The testimony of plaintiff publisher of The Record was that his paper "has definite Republican leanings" and that during the local election of 1971 The Record had supported the Republican Party. He was quite clear, however, that he owed no allegiance to either party and that his support of Republicans was because he felt they were better qualified or were more in accord with his philosophy. He agreed, and the Exhibits show, that on its masthead The Record holds itself out to be "A politically independent weekly." This is exactly the situation described in the court's opinion in the *Ohio State Journal* case. We therefore find that The Record is what it says it is, a politically independent weekly and not a "political newspaper" as those words are used in R. C. 731.21.

Having concluded, as a matter of fact, that there are two independent newspapers published and of general circulation in Harrison, we must determine the applicability of R. C. 731.21. It provides as follows:

"All municipal ordinances, resolutions, statements, orders, proclamations, notices, and reports, required by law or ordinance to be published, shall be published as follows:

"(A) In two English newspapers of opposite politics, published and of general circulation in the municipal corporation, if there are any such newspapers;

"(B) If two English newspapers of opposite politics are not published and of general circulation in the municipal corporation, then in one such political newspaper and one other English newspaper published and of general circulation therein;

"(C) If no English newspaper is published and of general circulation in the municipal corporation, then in any English newspaper of general circulation therein or by posting as provided in section 731.25 of the Revised Code, at the option of the legislative authority of such municipal corporation. * * *"

Paragraph (A) does not apply since there are not two papers of opposite politics. Paragraph (B) apparently cannot be applied since there is no "political newspaper." Paragraph (C) does not apply since it applies only "If no English newspaper is published and of general circulation in the municipal corporation" and, in fact, there are two such papers in Harrison.

We believe that in this situation the legislative intent can be determined by the history of the section and by utilizing the reasoning employed by the Supreme Court in *Elmwood Place* v. *Schanzle* (1915), 91 Ohio St. 354. The section which preceded R. C. 731.21 (G. C. 4228) was amended in 1915. (106 Ohio Laws 492, 493.) It provided for publication: (a) in two papers of opposite politics printed and of general circulation in the municipality if such there was, and if not; (b) in any paper printed and of general circulation therein, and if none; (c) in any paper of general circulation therein or by posting. This section was later amended in 1921 (109 Ohio Laws 229) and was identical with its predecessor except that it added in (b) the requirement of publication in one political paper published in the corporation.

We conclude from this that the legislative intent was to add publication in a locally published political newspaper, if such there was, but not to eliminate its second alternative,

namely publication in any locally published paper if there was one and was no political paper. Certainly it would be illogical to argue that it was insufficient to publish in one newspaper published within the corporation when publication in one newspaper published outside the corporation was specifically sufficient under R. C. 731.21 (C).

The fact that R. C. 731.21 (C) begins "If no English newspaper is published and of general circulation in the municipal corporation" leads one inexorably to the inference that publication in an English newspaper within the corporation was intended to be sufficient under R. C. 731.21 (B). In other words, the true intention of the Legislature could be expressed by adding at the end of R. C. 731.21 (B) "if there be no political newspaper then in any English newspaper published and of general circulation therein."

We conclude therefore that where no political newspaper is published in a municipal corporation, publication in any English newspaper published and of general circulation therein is sufficient to satisfy the requirements of R. C. 731.21. Accordingly defendants are not required to publish notices in The Record.

We cannot concur with plaintiff's theory that the Legislature intended the broadest possible publication. The history of the section and the section itself only support the proposition that the Legislature intended that there be some publication and it tried to balance the publication equitably so no party could use it as "spoils" of office.

Entry may be submitted granting judgment for defendants at plaintiff's cost.

*Judgment for defendants.*